# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:

Patrick Roch                           Case No. 20-12792-KHK

Debtor.                                   (Chapter 13)

### MEMORANDUM DECISION

This matter is before the Court on the Trustee's Motion to Dismiss Case (Docket No. 23) and Objection to Confirmation (Docket No. 85). An evidentiary hearing was held on August 12, 2021, at the conclusion of which, the Court took the matter under advisement. Having heard the evidence and arguments of counsel, and for the reasons stated below, the Court finds that the Debtor filed this case and his Plan in bad faith, and therefore, the Court will sustain the Trustee's Objection to Confirmation and grant the Trustee's Motion to Dismiss.

**Factual Background:**

1. Patrick Roch (the "Debtor") filed this case on December 30, 2020 (the "Petition Date").

2. The Debtor's prior cases include Case No. 18-13759-KHK, a chapter 13 that was filed on November 6, 2018 and dismissed on May 5, 2019, and Case No. 19-11944-KHK, a chapter 13 that was filed on June 12, 2019 and dismissed on March 3, 2020 (collectively, the "Prior Cases"). The Prior Cases were both dismissed for material default of plan payments.

3. As of the Petition Date and at present, the Debtor was and is employed with the Public Broadcasting Services ("PBS") as a senior technical product manager. Hr. Tr. 15:25-26; Hr. Tr. 16:1-7.[1]

4. Prior to obtaining employment with PBS, the Debtor drove for Uber and Lyft. The Debtor did not make contributions to a retirement account as a driver. Hr. Tr. 19:15-20.

---

[1] References to "Hr. Tr." refer to the Transcript filed at Docket No. 96.

5. Since his third month of employment with PBS, the Debtor has contributed $3,900 to his retirement account each month. Hr. Tr. 16:4-7.

6. The Debtor's initial schedules in this case indicated that he makes a $400 monthly contribution to his mother's healthcare expenses. That expense did not appear in the Debtor's Prior Cases.

7. At some point after starting with PBS, the Debtor's tax withholding per paycheck was increased to correct an inappropriate exemption that the Debtor had previously claimed. Hr. Tr. 16:8-17.

8. The Debtor testified that his six-year-old daughter, over whom he and his ex-wife share joint custody, spends the night at his home three to four nights per week. Hr. Tr: 16:19-25. However, on cross-examination the Debtor testified that his daughter spends one third of the time with him, but that he wants to see her more. Hr. Tr. 20-21.

9. In his original Schedule J and means test filed on January 23, 2021, the Debtor indicated he paid $1,620 per month in child-care related expenses. Following an objection from the Trustee, the Debtor amended the amount to $1,000 in his means test filed on May 20, 2021. The Debtor testified that he pays about $1,500 dollars a month in childcare expenses for his daughter. Hr. Tr. 17:1-4. He presented no documentary evidence in support of these expenses but claimed that he had given supporting documentation to his attorney. Hr. Tr. 21-22.

10. In the Debtor's means tests, both the initial means test filed at the outset of the case, as well as the Debtor's amendments, he has claimed a household size of two. *See Docket* No. 16, at pgs. 33-34; Docket Nos. 27, 30, 50, 67. In his Prior Cases, filed by the same attorney as the current case, the Debtor claimed a household size of one.

11. To date, the Debtor has not had a plan confirmed in this case.

12. On February 11, 2021, the Trustee filed his Motion to Dismiss this case. Docket No. 23

13. On May 20, 2021, the Debtor filed his fourth amended Chapter 13 Plan with this Court.

14. On June 2, 2021, the Debtor obtained this Court's approval to enter into a loan modification with his mortgage lender, which resulted in an approximately $319 reduction in the Debtor's monthly mortgage payment and eliminated his arrearages. *See* Docket No. 79.

15. On July 1, 2021, the Trustee filed an Objection to Confirmation of the Debtor's Plan. Docket No. 85.

**Conclusions of Law**:

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and the Order of Reference entered by the District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) (matters concerning the administration of the estate) and (L) (confirmation of plans).

A debtor's bad faith in filing constitutes "cause" for dismissal under section 1307(c). *Kestell v. Kestell (In re Kestell)*, 99 F.3d 146, 148 (4th Cir. 1996). When determining whether to dismiss a case for bad faith, the court must examine the totality of the circumstances. *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986).

The Trustee has moved to dismiss this case under 11 U.S.C. § 1307(c) for lack of good faith and for unreasonable delay under 11 U.S.C. §1307(c)(1). The Trustee believes the instant case was filed to "buy time for a loan mod" and that the Debtor is not proceeding toward confirmation because the plans he has filed fail to satisfy the disposable income and good faith requirements. The Trustee has also objected to the Debtor's Chapter 13 Plan on the same grounds. Docket No. 85. Furthermore, the Trustee asserts that this is the Debtor's third Chapter 13 filing in just over two years. The Trustee notes that the Debtor has been in Chapter 13 for over two years without making a meaningful payment to any of his creditors.

In essence, the Trustee asserts that the various means tests the Debtor has put before the Court are inaccurate and have been manipulated to avoid paying creditors. The Trustee takes issue with the Debtor's asserted household size of two and asserted expenses in connection therewith, his retirement contribution of $3,900 a month, and as a result of objections to the

Debtor's budget, the Debtor's proposed plan payment as well. The Court will address each argument and the Debtor's response in turn.

Manipulation of Household Size and Childcare Expenses

The Trustee argues that the Debtor's means tests are flawed because they are based on a household size of two, are inaccurate with respect to certain figures, and because they appear to have been manipulated to achieve the Debtor's desired results. With respect to the household size, the Debtor argues that the household size of two was determined using the "economic unit approach" endorsed by the Fourth Circuit Court of Appeals in *Johnson v. Zimmer*. As the Court of Appeals noted in *Johnson*:

> Under this method, a debtor's "household" would include individuals who operate as an "economic unit" with the debtor: those the debtor financially supports and those who financially support the debtor. In other words, those whose income and expenses are interdependent with the debtor's are part of his or her "household" for purposes of § 1325(b).

*Johnson v. Zimmer*, 686 F.3d 224, 237 (4th Cir. 2012).

Based on this approach, the Debtor argues that his household size is two because his daughter's finances are interdependent with his and she stays with him part-time. Hr. Tr. 5: 18-20. The Debtor's argument however is undercut by his own testimony that the amount of time he has his daughter amounts to one third of the time.[2] Therefore, under the economic unit approach, the household size is one and one third. The Debtor argues that under *Johnson v. Zimmer*, the Court should round that number up to a household of two. The Court disagrees. In *Johnson*, the Court of Appeals affirmed the bankruptcy court's decision to "round off to the nearest whole individual..." number. *Johnson v. Zimmer*, 686 F.3d 224, 242 (4th Cir. 2012). The nearest whole individual number for a household size of approximately 1.3 is one-- not two.

---

[2] While the Debtor did indicate that there were times where his daughter spent anywhere from 1-5 nights with him, he testified that as a whole he has his daughter one third of the time.

4

As a result, the Debtor's means tests that rely on a household size of two are flawed and inherently overstate the Debtor's expenses. Additionally, because the Debtor did not produce satisfactory evidence of the additional $1,500 in childcare expenses he continues to claim on his latest amended Schedule J or the $1,000 in childcare expenses he claims on his latest amended means test, that amount's inclusion also renders the Debtor's means tests flawed.

The Trustee has also identified, and the Debtor has not refuted, that the Debtor's means tests contained various inaccuracies and unsubstantiated entries with respect to certain expense figures. For example, the Debtor repeatedly failed to accurately record his vehicle expenses. *See* Docket No. 44-1; Docket No. 67, items 13(b), 33(b). The Debtor also misapplied the retirement deduction in his means test by initially indicating it was a *mandatory* contribution and by continuously overstating the amount of his retirement contributions during the applicable look back period (i.e., he represented that he made $3,900 monthly contributions for six months when he really made contributions for only four of those months). The Debtor also claimed $1,500 in childcare expenses for which he provided no evidentiary support. Upon the Trustee's objection to the childcare expense, the Debtor reduced it to $1,000 in his latest means test, but never provided documentary evidence to support the expense. Additionally, the Debtor initially claimed to incur a $400 monthly expense for his mother's health insurance, but conveniently decided to forego that expense when the Trustee objected. The Court notes that this expense was not scheduled in the Debtor's Prior Cases. The Court is troubled by the Debtor's pattern of making unsubstantiated expense claims, reducing or eliminating the expense when questioned, but then never substantiating the expense. The Debtor did not meaningfully refute the inaccuracies and shortcomings that the Trustee has pointed out. The Court is particularly

troubled with the inaccuracies and moving numbers given that this is the third time counsel has represented the Debtor before this Court.

Also, the Trustee has identified what appears to be the Debtor's attempt to manipulate the means test to unreasonably delay and divert income from creditors. For example, the Trustee observed that even though the Debtor's income substantially increased from his Prior Cases to now, his plan payment keeps going down, despite his loan modification eliminating his arrears and lowering his monthly payment (which constitutes an increase in disposable monthly income), because he increases his expenses. Hr. Tr. 12:1-8. As will be discussed below, the largest expense increase is the new retirement contribution of $3,900 a month.

Retirement Contribution

With respect to the retirement contribution, it is not *per se* bad faith for a chapter 13 debtor to make post-petition contributions to a retirement account. *Gorman v. Cantu*, 713 F. App'x 200, 204 (4th Cir. 2017) (post-petition retirement contributions not bad faith where there is a history of similar prepetition contributions). Here, the testimony before the Court is that the Debtor did not previously contribute to a retirement account because he could not afford to. There is no evidence before the Court however that there was ever a history of contributions prior to the Debtor's employment as a driver. The Debtor points out that the $3,900 contribution is below the maximum IRS limit and that the amount has not increased or changed during the current plan or case. While that may be true, the Court still must assess whether this contribution is being made in good faith.

The facts before the Court are that the Debtor is in his third Chapter 13 case in this Court in the last three years. He has made no meaningful payments to anyone other than his counsel,

and his counsel has been the same throughout the three cases. Moreover, there is no evidence that the Debtor ever made retirement contributions prior to his employment with PBS.

The Debtor asserts he did not previously make contributions because he could not afford to while driving for Uber and Lyft. However, this argument is undercut by the Debtor's willingness to fund payments on mortgage arrearages in the prior cases. In other words, the Debtor has the disposable monthly income when it comes to debts that he is motivated to pay (such as mortgage arrearages prior to his loan modification) but does not when it comes to paying other debts. As a result, the Court finds the Debtor's argument lacks credibility. As the Trustee points out, now that the Debtor has a loan modification and does not have to fund payments toward the arrearages and the monthly mortgage payment has actually gone down, but for the retirement contribution, the Debtor would have extra disposable monthly income. Under the totality of the circumstances, considering the Debtor's uncredible argument and when viewed in tandem with the Debtor's history, the Court cannot find that the Debtor commenced making retirement contributions in good faith when he had no prepetition history of *any* contributions.

The Trustee has also pointed out that the Debtor has proposed to pay into the plan what amounts[3] to the monthly savings achieved by the loan modification approved by this Court at Docket No. 79. The Trustee notes that the Debtor was apparently enjoying the $319 savings pre-petition, as he had entered into a trial modification prior to filing his petition. The Trustee also notes that this is the Debtor's fourth proposed plan and that the first proposed payments were significantly lower than this amount. *See* Docket No. 92. The Debtor did not meaningfully refute this point, nor could he. The Debtor's attempt to propose plan payments and budgets that ignore the approximately $319 increased disposable monthly income achieved from the loan

---

[3] The plan calls for payments of $203.99 for two months, and then $290 for the next month, and then $375 for the remainder of the plan term.

modification demonstrates a lack of good faith in proposing plans and budgets that he puts before this Court.

Based on the foregoing, the Court has no confidence in the accuracy of any of the Debtors' means tests and proposed budgets. Indeed, the only confidence the Court has is that the Debtor has inflated his expenses to hide disposable income. Further, under the totality of the circumstances, the Court finds that the Debtor prepared and filed those documents and the corresponding Chapter 13 Plans in an effort to unreasonably delay and thwart his creditors.

**Conclusion:**

For the foregoing reasons:

    A.    The Trustee's Objection to the Debtor's Plan is SUSTAINED. The Trustee will submit an Order within 10 days sustaining the Objection.

    B.    The Trustee's Motion to Dismiss is GRANTED. The Trustee will submit an Order within 10 days granting the Motion.

Date: Nov 4 2021

/s/ Klinette H Kindred
Klinette H. Kindred
United States Bankruptcy Judge

Entered On Docket: November 4, 2021

Copies to:

Thomas P. Gorman

Ashvin Pandurangi